IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CONKEY AND CAROL CONKEY,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | No. C 07-80062 MJJ<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR RETURN OF PROPERTY** |

**INTRODUCTION**

Before the Court is Plaintiffs David and Carol Conkey's ("Plaintiffs") Motion for Return of Property. (Docket No. 1.) On February 26, 2002, the Drug Enforcement Agency ("DEA") administratively forfeited Plaintiffs' property – $400,300 in U.S. currency. By their Motion, Plaintiffs seek return of the currency. Defendant United States of America ("Government") opposes Plaintiffs' Motion. For the following reasons, the Court **DENIES** the Motion.

**BACKGROUND**

In connection with a criminal investigation, the DEA seized $400,300 in U.S. currency and various chemicals from Plaintiffs' residence on October 10, 2001. Shortly thereafter, the DEA commenced separate administrative forfeiture proceedings against the seized money and miscellaneous chemicals. Plaintiffs seek return of only the currency in this matter.

The DEA initiated administrative forfeiture actions by issuing notice letters to Plaintiffs.

The notice letters provided information on how Plaintiffs could request remission, request mitigation, or contest the forfeiture. As to the currency, multiple Notice of Seizure letters dated November 26, 2001 were mailed to several different addresses for Plaintiffs, advising them that the filing deadline to contest the currency forfeiture was December 31, 2001. (Hieronymus Decl., Exhs. 1, 3, 5, 7, & 9.) As to the chemicals, multiple Notice of Seizure letters dated November 29, 2001 were mailed to several different addresses for Plaintiffs, advising them that they must contest forfeiture of the chemicals by January 3, 2002. (Hieronymus Decl., Exhs. 16, 18, 20, 22 & 24.) The DEA also published notice of the currency forfeiture in the Wall Street Journal for three consecutive weeks from December 3 through December 17, 2001, and published a similar notice regarding the chemicals from December 10 through December 24, 2001. (Hieronymus Decl., Exhs. 11 & 26.)

The central dispute between the parties revolves around the date that the Notice of Seizure letters relating to the currency forfeiture were actually mailed by the DEA. Certified mail receipts, returned to and retained by the DEA, show that two of these notice letters sent to Plaintiffs' home address in San Ramon, California were received and signed for on December 6, 2001. (Hieronymus Decl., Exhs. 2 & 6.)[1] Two of the other notice letters regarding the currency forfeiture, mailed to Plaintiffs' post office box in Reno, Nevada, were returned to the DEA stamped "RETURN TO SENDER – UNCLAIMED" by the U.S. Postal Service. (Hieronymus Decl., Exhs. 4 & 8.)

The DEA received Plaintiffs' claims contesting the administrative forfeiture of all the assets – both the money and chemicals–on January 3, 2002. (Hieronymus Decl., Exhs. 12.) On January 8, 2002, the DEA notified Plaintiffs, by a letter addressed to their attorney, William Panzer, that their claim contesting forfeiture of the chemical assets was accepted and would be referred to the United States Attorney's Office for the commencement of judicial forfeiture proceedings. (Hieronymus Decl., Exh. 29.) In a separate letter dated January 8, 2002, the DEA notified Plaintiffs through Panzer that their claim contesting the forfeiture of the $400,300 was untimely. (Hieronymus Decl., Exh. 13.) That letter indicated that Plaintiffs would have an additional 20 days to petition for an

---

[1] Mr. Hieronymus's declaration states that a third notice letter relating to the currency forfeiture, addressed to Christopher King Conkey "care of" the Plaintiffs and mailed to the same San Ramon address, was also received and signed for on December 6, 2001. (Hieronymus Decl., ¶ 4(f).) However, Exhibit 10, which he asserts is the certified mail receipt for this notice letter, is missing from his declaration.

2

administrative ruling by the Forfeiture Office. (*Id.*) Plaintiffs did not file such a petition. On February 26, 2002, the DEA issued a declaration of forfeiture for the $400,300 in U.S. currency. (Hieronymus Decl., Exh. 15.)

On February 26, 2007, Plaintiffs filed the instant Motion for return of their property under Federal Rule of Criminal Procedure 41(g).

## DISCUSSION

Plaintiffs' Motion alleges that the DEA unlawfully denied them an opportunity to contest the seizure and forfeiture of the currency by wrongfully rejecting, as untimely, their allegedly timely claim. Plaintiffs allege that this denial of an opportunity to be heard amounts to a due process violation.

### I. The Court Construes Plaintiff's Rule 41(g) Motion as Civil Complaint.

Because all criminal proceedings against Plaintiffs concluded before the filing of Plaintiffs' Motion, Federal Rule of Criminal Procedure Rule 41(g) is inapplicable here. *See United States v. Martinson,* 809 F.2d 1364, 1366-67 (9th Cir. 1987). Instead, the Court must construe Plaintiffs' Rule 41(g) Motion as a civil complaint. *See id.; see also Onwubiko v. United States*, 969 F.2d 1392, 1397 (2d Cir. 1992). Furthermore, the Court construes the Government's response to Plaintiffs' Motion as a summary judgment motion pursuant to the Federal Rule of Civil Procedure 56. *See Vitrano v. United States,* 2007 WL 2850498 at *1 (S.D.N.Y. October 1, 2007).[2]

### II. The Court Has Jurisdiction To Hear Plaintiffs' Due Process Challenge.

The Court has discretion to exercise equitable jurisdiction here, because Plaintiffs claim a

---

[2] Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *Anderson*, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id.* at 250. Thus, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

defect in the process that rendered their legal remedy unavailable. Plaintiffs allege, in essence, that the government rendered their legal remedy unavailable by failing to initiate judicial forfeiture after inaccurately deeming Plaintiff's claim untimely. The Court may exercise jurisdiction to review such allegations. A litigant's "failure to resort to the statutory scheme for obtaining a judicial forfeiture cannot be taken to deprive this court of jurisdiction to hear appellant's claims that appellant did not receive constitutionally adequate notice of the availability of judicial forfeiture and that the statutory scheme and the Constitution required the government itself to initiate judicial forfeiture." *Marshall Lseasing, Inc. v. United States*, 893 F.2d 1096, 1103 (9th Cir. 1990); *see also Foehl v. United States*, 238 F.3d 474, 478-79 (3d. Cir. 2001). The Government concedes the existence of jurisdiction to review such due process allegations. (Government's Supplemental Response, Docket No. 20 at 3:12-22.)[3]

## III. Based On The Undisputed Record, Plaintiffs' January 3, 2002 Claim Relating To the Currency Forfeiture Was Untimely When Submitted To The DEA.

Plaintiffs' contention that the DEA improperly rejected their claim relating to the currency forfeiture as untimely rests on their ability to demonstrate that the notice letters were in fact mailed by the DEA later than November 26, 2001 (the "mailing date" indicated on the face of the notice letters). Pursuant to 18 U.S.C. § 983(a)(2)(B), the deadline for submitting a claim contesting a seizure cannot be less than 35 days from the date the notice letters are mailed. If the notice letters were indeed mailed on November 26, 2001 by the DEA, then December 31, 2001 (the deadline stated in the notice letters) was the cutoff for claims contesting the currency forfeiture, and Plaintiffs' January 3, 2002 claim challenging the currency forfeigure was untimely. However, if the notice letters were instead mailed on November 29, 2001 by the DEA – as Plaintiffs contend here – then Plaintiffs' January 3, 2002 claims fell within the 35-day window and were improperly rejected

---

[3] Both sides initially asserted that Plaintiffs' Motion, purportedly brought under Federal Rule of Criminal Procedure 41(g), should be construed and treated as a motion seeking relief under the Civil Asset Forfeiture Reform Act (CAFRA), codified in part at 18 U.S.C. §§ 981 & 983. Plaintiffs later backed away from this position in supplemental briefing and oral argument, and argued that their request for relief is premised on constitutional due process grounds and falls outside the scope of 18 U.S.C. § 983(e) and CAFRA. Were CAFRA to govern Plaintiffs' Motion, relief would be barred because Plaintiffs did not file their Motion within the five-year limitations period imposed by CAFRA. *See* 18 U.S.C. § 983(e) ("A motion under paragraph (1) may be filed not later than 5 years after the date of final publication of notice of seizure of the property."). In light of the Court's determination that Plaintiffs' due process allegations lack merit in any event (*see* Section III, below), the Court need not resolve whether Plaintiffs' Motion falls within the limitations bar of CAFRA.

4

as untimely by the DEA.

As discussed below, based on the record before the Court, undisputed facts establish that Plaintiffs' January 3, 2002 Claim relating to the currency forfeiture was untimely submitted to the DEA.

### A. The Record Contradicts Plaintiffs' Contention That Two Envelopes Postmarked November 29, 2001 Contained Currency Forfeiture Notice Letters.

Plaintiffs' primary factual contention in support of their Motion is that the two currency forfeiture notices that were delivered to Plaintiffs' home address in San Ramon, California were mailed, and postmarked, on November 29, 2001. (Mot. at 1:26-28 & 9:12-13.) In support of this contention, Plaintiffs cite to Exhibit C of David Conkey's declaration. This exhibit – which is not mentioned or authenticated in Mr. Conkey's declaration – appears to be two certified mail envelopes sent from the DEA to Plaintiff's San Ramon address, both clearly postmarked November 29, 2001.

Even assuming the two unauthenticated envelopes are admissible as evidence, the record before the Court flatly contradicts Plaintiffs' unsupported assertion that these two envelopes contained notice letters relating to the currency forfeiture. The two envelopes bear postal service tracking numbers ending in "9374" and "9398", respectively. (Conkey Decl., Exh. C.) As uncontradicted evidence submitted by the Government demonstrates, those two tracking numbers match certified mail receipts that had been stamped with Asset ID 02-DEA-398284 (Hieronymus Decl., Exhs. 17 & 21), which is the Asset ID corresponding to the chemicals forfeiture, not the currency forfeiture. (*Compare* Hieronymus Decl., Exhs. 1-9 (currency forfeiture letters and receipts displaying Asset ID 02-DEA-398283) *with* Hieronymus Decl., Exhs. 16-25 (chemical forfeiture letters and receipts displaying Asset ID 02-DEA-398284).)[4] Moreover, the postmark dates on the two envelopes (Conkey Decl., Exh. C) match the "NOTICE MAILING DATE" of November 29, 2001 printed on the face of the notice letters concerning the chemicals forfeiture (Hieronymus Decl., Exhs. 16 & 20). Thus, the record unambiguously indicates that the two envelopes contained notices

---

[4] Although Plaintiffs raise foundation and hearsay objections to several of the statements found in the Declaration of John Hieronymus, Plaintiffs do not dispute that the documentary exhibits attached to the declaration are authentic and admissible records that exist in the DEA case file. (Plaintiffs' Reply, Docket No. 14 at 1:27-2:2.)

1 relating to the chemicals forfeiture, not the currency forfeiture. Plaintiffs have come forward with
2 absolutely no evidence to rebut this record.

### B. The Government Has Adequately Demonstrated That The Currency Forfeiture Notice Letters Were Mailed On November 26, 2001.

Plaintiffs contend that, in any event, the Government's documentary evidence fails to affirmatively establish that the currency forfeiture notices were actually mailed on November 26, 2001, or to affirmatively establish that the receipts signed by Carole Conkey are receipts for those particular notices. After reviewing the documentary evidence submitted by the Government, the Court emphatically rejects Plaintiffs' assertion.

First, the Asset IDs on the two receipts signed by Carole Conkey on December 6, 2001 (Hieronymus Decl, Exhs. 2 & 6) match the Asset ID for the two currency forfeiture notice letters at issue (Hieronymus Decl., Exhs. 1 & 5). This documentary evidence confirms that Carole Conkey did indeed sign for notice letters relating to the currency forfeiture.

Second, the only reasonable inference from the documentary evidence is that the currency forfeiture notice letters for which Carole Conkey signed were actually mailed on November 26, 2001, the date listed as the "NOTICE MAILING DATE" on the face of the letters (Hieronymus Decl., Exhs. 1 & 5). While the postmarked envelopes that contained these two notice letters (which were last known to be in Plaintiffs' possession) are not in evidence, the DEA also mailed out two other currency forfeiture notice letters to Plaintiffs' Reno, Nevada post office boxes that bore the same November 26, 2001 "NOTICE MAILING DATE." These two notice letters sent to Reno were returned to the DEA by the U.S. Postal Service after failed delivery, and as a result are available to the Court. (Hieronymus Decl., Exhs. 4 & 8.) Tellingly, both returned envelopes unmistakably bear November 26, 2001 postmarks that match the "NOTICE MAILING DATE" of all five currency forfeiture notice letters. Taken as a whole, the only reasonable inference that can be drawn from this documentary evidence is that the currency forfeiture letters were indeed mailed and postmarked on November 26, 2001 as the Government contends.

///

///

**CONCLUSION**

Based on the record before this Court, the Court finds that the undisputed record establishes that the DEA properly denied as untimely Plaintiffs' January 3, 2002 claim regarding the currency forfeiture. There was therefore no denial of due process. Accordingly, the Court **DENIES** Plaintiff's Motion for Return of Property. The Clerk is **DIRECTED** to administratively close this matter.

**IT IS SO ORDERED.**

Dated: March 3, 2008

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE